ELIPHALET CLARK, in equity, *vs.* DAVID ROBINSON.

*Bill in equity—fraud.*

A bill alleged, substantially, that the respondent, with intent to defraud the complainant, willfully and knowingly made to him a series of false and fraudulent representations, specifically set out, as to matters of fact relating to the " McKay Sole Sewing Machine," and the " Foreign Sole Sewing Machine Company;" and, that by means of such representations, he induced the complainant to purchase of him a large number of worthless shares in a mock company, and to give him in exchange therefor, a conveyance of several lots of land situate in this State, praying that the conveyance be decreed void and the respondent ordered to reconvey to the complainant. On demurrer, *Held,* that the bill be sustained.

BILL IN EQUITY, heard on demurrer.

The bill alleged, substantially, that the respondent, of Boston, Mass., in 1864, at Portland, contriving and intending to defraud the complainant, declared to him, that the " McKay Sole Sewing Machine " was patented and owned by an organized company (of which the respondent was a stockholder), in Boston ; that the company was then successfully operating the machine in the United States for the manufacture of boots and shoes ; that the stock had rapidly advanced in value, and the dividends large ; that a company had obtained letters-patent on the machines in England, and introduced them there where they promised, at an early day, to be successful ; that the stock of the company was not in the market, could be procured only of private holders at a high figure, and that the price was constantly advancing, and the dividends increasing each month.

That a " Foreign Sole Sewing Machine Company," of which the respondent was a member, had been organized in Boston, with a capital of $400,000, were owners of the patent-right, with the sole right to secure patents of the same in all the Canadas and all the countries of Europe, excepting England ; that measures had been taken to secure letters-patent in the countries of Europe ; that the respondent had then a limited number of shares, the par value of which was ten dollars, some of which he had sold for five dollars ; that they were then worth seven dollars and fifty cents, and would advance to ten dollars in the ensuing January ; that the well-known business talent and energy of the managers of the company, with its large capital, would insure its success in a short time ; that the stockholders could not be assessed for any purpose ; that the capital of $25,000, then held by the company, was ample to preclude assessments.

. That relying upon such declarations, the complainant purchased, as he then supposed, of the respondent, two hundred and eighty shares in the " Foreign Sole Sewing Machine Company," and took from him what purported to be a certificate of such shares, at the rate of seven dollars and fifty cents per share, and paid him there-

for by a conveyance of seven lots of land, situate in Westbrook, at three hundred dollars each, to the respondent, Gordon McKay, and Lyman R. Blake, of Boston.

That, afterwards, in 1865, relying upon the same representations, the complainant purchased, as he supposed, of the respondent, three hundred and fifty-four shares in said company, at same rate, receiving what purported to be a certificate thereof, paying therefor the complainant's interest in a certain lot of land in Portland, conveyed to the respondent by S. C. Chase.

That all such declarations were and are false, by means whereof he has been defrauded of said lots of land, etc.

Prayer, for a discovery ; that the supposed sale of said shares be decreed fraudulent and void ; that the conveyance of said lots of land be decreed void ; and that the respondent be ordered to restore all the property thus corruptly taken from the complainant.

To the bill, the respondent demurred.

*P. Barnes*, for the respondent, cited *Woodman* v. *Freeman*, 25 Maine, 531.

*Howard & Cleaves*, for the complainant.

BARROWS, J. The bill alleges substantially that the defendant, in the summer of 1864, with intent to defraud the complainant willfully and knowingly, made to him a series of false and fraudulent representations as to matters of fact relating to the " McKay Sole Sewing Machine," and the " Foreign Sole Sewing Machine Company," and by means of these false and fraudulent statements, which are particularly set forth in the bill, induced the complainant to purchase of him a large number of worthless shares in a pretended company, which the bill charges never had a legal existence, nor any such capital, nor working cash capital, nor patent-rights, as Robinson had represented, but was altogether " false and fabricated for false and fraudulent purposes, as the said Robinson then and there well knew," and to give in exchange for these worthless shares a conveyance of seven lots of land in Westbrook, at $300 a

lot, to said Robinson and Gordon McKay and Lyman R. Blake, all of Boston, and also a conveyance of complainant's interest in a lot of land on Chestnut street, in Portland, of the value of $2,655, which was deeded to said Robinson by Sewall C. Chase, at complainant's request, in payment for some of these shares; and thereupon he offers to return the certificates of shares, and prays that Robinson may be held to answer and make discovery, and that the sale of the shares may be decreed fraudulent and void, and that the conveyances of the lots of land, etc., may be decreed and held void and of no effect, and the defendant required to restore the property.

The defendant alleges as cause for the demurrer to the bill that these matters do not make a case, which entitles the complainant to any such discovery, or relief in equity, as is here sought. In support of this position, he relies upon the doctrine of *Woodman* v. *Freeman*, 25 Maine, 531.

It was there held, that while a court of equity may rescind a conveyance or contract, which has been procured by fraud, when a proper case for it is presented, yet one who is induced to purchase lands of another, and to pay him for them by the fraudulent representations of a third person interested to effect such sale, cannot recover in equity the amount thus paid of such third person, and require him to receive a conveyance of the lands; nor can the court entertain a case in equity to give relief by way of damages against one who makes such fraudulent representations, when that relief is sought not as incidental or auxiliary to other relief granted to make it complete, but in a case where no other relief can be given, and when the party complaining has a plain and adequate remedy at law. And the court incidentally refer to and approve a series of decisions in which it is held, that if fraudulent representations have been made respecting personal property or personal rights, relief for injuries thereby occasioned can only be obtained by an action at law, and a court of equity will not entertain jurisdiction. But these are all cases where the fraud affected the rights of the complainants in and to personal property only. The case of *Wood-*

*man* v. *Freeman* arose, and was decided when the equity jurisdiction of this court was defined by c. 96, § 10, R. S. of 1841, which contained an express limitation of such jurisdiction to cases " where the parties have not a plain and adequate remedy at law." But we do not think it necessary to determine whether the omission of this phrase in the corresponding section of the Revised Statutes of 1857 does away with a condition which has been so far recognized as essential to the existence of jurisdiction in equity, that an allegation respecting it has become a formal part of almost every bill, and is found in the one here presented.

We think the case may be distinguished from *Woodman* v. *Freeman* on another ground. The bill in effect sets forth the procurement by the defendant of conveyances of real estate to himself, from the complainant, by means of falsehood and fraud, and the relief asked is, that these conveyances may be decreed void and of no effect, and the defendant required to reconvey, so that the complainant may be reinstated in possession, with a full and clear title to the property, of which he alleges he has been deprived by the fraud of the defendant. We may readily suppose circumstances which make such a restoration a more full and adequate remedy, than any assessment of damages which could be had in an action at law. Numerous cases are to be found in the books, where this relief has been afforded, and in some of them where there was but comparatively slight evidence of misbehavior, on the part of the grantee, in procuring the conveyance.

Thus, where an aged and illiterate man, in feeble health, a day or two before his death made a deed for an insufficient consideration, without independent professional advice, it was set aside at the instance of his heir, and the deed ordered to be delivered up and cancelled. *Clark* v. *Malpas*, 31 Beav. 80.

And where an unmarried lady, without professional advice, executed a deed in favor of her brother, with whom she was residing at the time, it was subsequently set aside on the prayer of the lady and her husband. *Sharp* v. *Leach*, 31 Beav. 491.

Doubtless where the parties are on an equal footing, as to intelli-

gence and capacity, and sustain no peculiar relation of trust and confidence to each other, relief of this description will not be given, unless a case of palpable fraud is distinctly alleged and satisfactorily proved; but it is none the less certain that one of the prominent heads of equity jurisdiction, founded upon the peculiar remedy, is where the rescission, cancellation, and delivery up of agreements, securities, or deeds is sought on the ground of fraud and foul practice in the procurement of them. Story's Eq. Juris. vol. 1, § 692. "If there is actual fraud, there seems the strongest ground for the interference of a court of equity, to rescind a contract, security, or other instrument." See *Rumph* v. *Abercrombie*, 12 Ala. 64; *Sheppard* v. *Ireson*, *idem*, 97. It was one of the difficulties mentioned by the court, as insuperable, in *Woodman* v. *Freeman*, that "no written or other legal contract or bargain, for the conveyance of any part of the tract of land by the defendants, or either of them, to the plaintiff, is proved to have existed at any time."

Having due regard to all the limitations of the general principle laid down by Judge Story (Equity Juris. vol. 1, § 184) as follows: "With the exception of wills . . . courts of equity may be said to possess a general, and perhaps a universal concurrent jurisdiction with courts of law, in cases of fraud, cognizable in the latter; and exclusive jurisdiction in cases of fraud beyond the reach of the courts of law," we are unable to perceive that any of these limitations preclude us from affording the relief here sought, if, upon final hearing, the case presented by the bill is found to be supported by the proof. Nor do we think this conclusion is at all in conflict with the doctrine of *Woodman* v. *Freeman*, *ubi supra*.

It is not merely an assessment of damages, accruing from fraudulent representations with regard to personal property or rights, which is sought, but a species of redress which the common law is unable to compass, by declaring void conveyances of real estate made by the complainant to defendant, under the influence of the fraud and falsehood perpetrated by the latter, in order to procure them.

There is nothing before us to indicate that the defendant does

not still hold the title to the greater part of the property thus wrong-fully obtained. To secure the restoration of the undivided interest conveyed to McKay and Blake, it would be necessary that they should be made parties to the bill. But the question is not, now, to what extent relief can be granted, but whether any is attainable upon the facts presented in the bill. We think it would be a re-proach to our system of equity jurisprudence, to say that there was none. See *Pratt* v. *Philbrook*, 41 Maine, 132.

*Demurrer overruled.*

*Defendant to answer.*

APPLETON, C. J.; KENT, WALTON, and DANFORTH, JJ., con-curred.